IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

PINELLAS COUNTY, A
POLITICAL SUBDIVISION OF
THE STATE OF FLORIDA,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

      Appellant,

v.

CASE NO. 1D14-4187

FLORIDA DEPARTMENT OF
JUVENILE JUSTICE,

      Appellee.

_____/

Opinion filed December 4, 2015

An appeal from an order from the Department of Juvenile Justice.
Christina K. Daly, Interim Secretary.

Nancy Meyer, and Carl E. Brody, Clearwater, for Appellant.

John Milla, Tallahassee, for Appellee.



MARSTILLER, J.

      Pinellas County appeals a Department of Juvenile Justice ("Department")

final order entered on remand from this court after we reversed an earlier order in

*Okaloosa County v. Department of Juvenile Justice*, 131 So. 3d 818 (Fla. 1st DCA

2014).  The county asserts the post-mandate order does not fully comply with our mandate.  Concluding otherwise, we affirm.

This controversy dates back to December 2009, when the Department issued its annual county-by-county reconciliation of juvenile detention facility utilization for fiscal year ("FY") 2008/09 pursuant to section 985.686, Florida Statutes (2008), which sets out the state-county cost sharing and allocation framework for secure detention facilities in Florida.  As to Pinellas County, the Department asserted a credit due of $465,463.89.  On January 26, 2010, the Department issued a letter to the counties setting out the following procedures for challenging the assessments in the annual reconciliation:

- Counties had until February 15, 2010, to file their challenges to the reconciliation with the Department.

- The Department would review the challenges and determine if any adjustments need to be made and which counties will be affected by those potential changes.  All affected counties would be notified of the potential adjustments even if those counties did not submit a challenge.

- If challenges to the reconciliation could not be resolved with the concurrence of all affected counties, the Department would file a request for a hearing with the Division of Administrative Hearings ("DOAH").

- Affected counties would be able to present their case regarding the adjustments at the hearing.

Pinellas County filed a challenge according to the outlined procedure.  But before the Department completed its review of the challenges, the county petitioned for an evidentiary hearing at DOAH.

On March 23, 2010, the Department wrote to the counties announcing it had completed its analysis of all challenges to the FY 2008/09 reconciliation. As to Pinellas County, the Department's proposed adjusted reconciliation amount was a $918,522.41 credit. The letter advised the counties that if they wanted to challenge the proposed adjustments, they must file a petition for hearing with the Department; the letter also recognized that certain counties, like Pinellas County, had already filed such petitions. On March 25, 2010, Pinellas County wrote to the Department acknowledging the adjusted amount as an additional credit, and asserting a total credit due for FY 2008/09 of $1,383,986.36.

The DOAH proceedings concluded with an August 22, 2012, recommended order concluding that the Department had deviated from the requirements of section 985.686(5) by failing to calculate "actual costs" for detention cost-sharing for FY 2008/09. Only 12 counties had challenged the December 7, 2009, figures; thus, as to the remaining counties, the incorrectly calculated amounts were final. Of the 12 challenging counties, only seven took their challenges to DOAH and were parties to the administrative proceedings. Of those seven, the ALJ determined that four—Pinellas County, Brevard County, Hillsborough County and Santa Rosa County—had accepted the Department's adjusted amounts set forth in its March 23, 2010, letter. The remaining three counties—Hernando County, Miami-Dade County and Broward County—had not accepted the 2010 adjustments and were entitled "to an

3

accounting of [their] actual costs for providing predisposition juvenile detention for fiscal year 2008-2009." Accordingly, the recommended order stated:

RECOMMENDATION

Based on the foregoing Findings of Fact and Conclusions of Law, it is

RECOMMENDED that the Department of Juvenile Justice enter a final order that:

A. Reinstates the amounts set forth in the Department's December 7, 2009, annual reconciliation letter for the following Counties: Alachua, Orange, Escambia, City of Jacksonville, Bay, Seminole, and Okaloosa;

B. Reinstates the amounts set forth in the Department's March 23, 2010, adjustment letter for the following Counties: Pinellas, Brevard, Hillsborough, and Santa Rosa; and

C. Provides that the Department will, without undue delay, provide a revised assessment that states the actual costs of providing predisposition secure juvenile detention care for fiscal year 2008-2009 for the following Counties: Hernando, Miami-Dade, and Broward.

Disagreeing with the ALJ's conclusions that it had incorrectly interpreted section 985.686(5) and deviated from the statute's calculation requirements, the Department entered a final order on January 11, 2013, rejecting recommendations B and C in the recommended order, and ordering that "The annual reconciliation announced on December 7, 2009, is reinstated for all counties."

On the counties' appeal of the 2013 final order, the Department conceded

4

error—acknowledging it had misinterpreted portions of the detention cost-sharing statute[1]—and agreed to adopt the ALJ's recommendation to reinstate the amount due to Pinellas County consistent with the Department's March 23, 2010, adjustment letter. *See Okaloosa County*, 131 So. 3d at 819. This court, accepting the Department's concession, reversed the final order and remanded with instructions to the Department to adopt the recommended order "in its entirety." *Id*. at 821. Our mandate issued on February 25, 2014.

On August 14, 2014, the Department entered a "Final Order on Remand From First District Court of Appeal," setting aside the previous final order and adopting each of the three recommendations set out in the DOAH recommended order. With respect to Pinellas County, the final order on remand reinstated the amount set out in the March 23, 2010, adjustment letter as the amount Pinellas County should have been assessed for its share of detention costs during FY 2008/09. The Department concluded the order with a footnote informing the counties that:

> No moneys were appropriated for Fiscal Year 2014/2015 to credit counties. Some counties continue to pursue credits or refunds for past fiscal years. Only the Legislature has the power to cure such complaint.

It is this footnote Pinellas County takes issue with in the current appeal,

---

[1] Our decision in *Department of Juvenile Justice v. Okaloosa County*, 113 So. 3d 1074 (Fla. 1st DCA 2013), which issued after the Department's 2013 final order, had affirmed a different ALJ's ruling that the Department incorrectly interpreted section 985.686 in calculating cost-share.

arguing the Department failed to fully adopt the recommended order, as directed by this court, because it has failed to apply a $1.38 million FY 2008/09 overpayment credit toward the county's future cost-sharing obligation. The Department counters that its final order fully complies with this court's mandate because the issue of crediting or reimbursing counties for overpayments is a separate matter requiring legislative spending authorization.

At oral argument in this appeal, the parties discussed at great length the method by which the Department can credit Pinellas County and the other counties for their overpayments, and whether legislative authority is needed. While this issue is, in our view, a critical matter needing resolution sooner rather than later, whether by declaratory action, or by the Department's agreement to seek necessary appropriations, or by some other vehicle—indeed, according to counsel for the Department during oral argument, total creditable or reimbursable overpayments from FY 2008/09 forward, when calculations are complete, will be "truly staggering numbers," reaching "at least" $40 million—it is not one for us to resolve in this appeal. The DOAH recommended order we affirmed and directed the Department to adopt was limited to correcting the juvenile detention cost-sharing calculations for FY 2008/09; it made no recommendation concerning credits for or reimbursements of overpayments. The only recommendations the ALJ made are those quoted *supra*, and the Department's final order on remand adopted them all.

6

Any action or inaction by the Department beyond that is simply not ripe for our consideration in this appeal. Pinellas County thus has failed to demonstrate the Department's noncompliance with this court's mandate, and we accordingly affirm the final order on appeal.

AFFIRMED.


THOMAS, J., CONCURS; KELSEY, J., DISSENTS WITH OPINION.

KELSEY, J., dissents with opinion.

I respectfully dissent to the extent the majority decision stops short of affording the counties any remedy for the Department's failure to comply with section 985.686(5) of the Florida Statutes and the credit requirement of Rule 63G-1.008 of the Florida Administrative Code (now rule 63G-1.017(6)). We have jurisdiction over the question of a remedy in two ways: because remedy was an inherent part of the prior appeal and encompassed in our previous decision, and because remedy is properly addressed in this appeal after the Department stated its holding on remedy in its new final order on remand.

We previously held that the counties' respective shares of costs must be based on actual costs and cannot encompass the "tethering" that the Administrative Law Judge invalidated. Okaloosa County v. Dep't of Juvenile Justice, 131 So. 3d 818, 820-21 (Fla. 1st DCA 2014). Throughout the proceedings before the ALJ and in the prior appeals here, it has been undisputed that the counties have a statutory right to receive credits under section 985.686(5) and Rule 63G-1.008 of the Florida Administrative Code. The rule clearly provides that credits function as a reduction of future billings, just as debits are added to future billings:

> (2) If a county's actual usage is found to have exceeded the amount paid during the fiscal year, the county will be invoiced for the excess usage. The invoice will accompany the reconciliation statement, and shall be payable on or before January 31.

> (3) If a county's actual usage was less than the estimated amounts

8

paid during the fiscal year, the county will be credited for its excess payments. Credit will be reflected in the November billing, and will carry forward as necessary.

Fla. Admin. Code R. 63G-1.008 (2006). The function of debits and credits in the "reconciliation" process remained the same under the new rule adopted in 2010:

(6) If the total amount paid by a county falls short of the amount owed based on actual utilization, the county will be invoiced for that additional amount. The amount due will be applied to the county's account. An invoice will accompany the reconciliation statement, and shall be payable on or before March 1. If the amount paid by a county exceeds the amount owed based on actual utilization, the county will receive a credit. The credit will be applied to the county's account and be included on the invoice sent in November.

Fla. Admin. Code R. 63G-1.017(6).

The ALJ concluded that the requirements of the rule were clear and that the counties' accounts were to be credited or debited to reflect the Department's revised calculations. The provision of credits and debits was an inherent part of the analysis of how actual costs were to be calculated. In our opinion in <u>Okaloosa</u> we also stated that the counties would be "debited or credited for the difference" between estimated payments and actual costs. <u>Okaloosa</u>, 131 So. 3d at 820 ("If the county's actual cost is more or less than the estimated payments made, then <u>the county will be debited or credited</u> for the difference.") (emphasis added). <u>See also</u> <u>Department of Juvenile Justice v. Okaloosa County</u>, 113 So. 3d 1074 (Fla. 1st DCA 2013) (affirming ALJ's rejection of the Department's erroneous interpretation of statutory factors used to calculate counties' shares of costs). Our previous holding, by requiring calculation

9

of the counties' shares of costs based on actual costs, necessarily required that credits be extended to the counties deemed to have made overpayments under the plain language of Rule 63G-1.008. Thus, the Department was required to do so pursuant to our earlier opinion.

In addition, remedy is a legal issue of statutory and rule interpretation that is squarely at issue in this appeal from the Department's final order, and was briefed and argued, and therefore we can and should resolve it now. On remand from our 2014 decision, the Department added to its new final order the assertion that "[o]nly the Legislature has the power to cure" the counties' ongoing attempts to receive actual credits for past fiscal years. Presented as it was in a final order of the Department, this constitutes a ruling on the counties' entitlement to the remedy of receiving credits to reflect actual costs, and the counties properly challenge it in this new appeal. Indeed, had the counties failed to challenge it, they risked waiving any objection to it.

The Department's failure to make the counties' credits function as real credits applied to future years' funding obligations violates our holding and mandate in <u>Okaloosa County</u> and violates the plain meaning of section 985.686 and Rule 63G-1.008. To remedy a violation of constitutional or statutory rights, the judicial branch has the authority to order an executive branch agency to comply with statutes that require the expenditure of funds. <u>See, e.g.</u>, <u>Florida Dept. of Agr. and Consumer</u>

10

Svcs. v. Cox, 947 So. 2d 561 (Fla. 4th DCA 2006) (rejecting agency's separation of powers argument and upholding court's authority to order agency to fund notice to class members in citrus canker litigation as required by procedural rule); see also Florida Dept. of Children & Families v. J.B., 154 So. 3d 479, 481 (Fla. 3d DCA 2015) (illustrating that although the judicial branch may not order the state to exercise its discretionary spending authority in a specified manner, the issue is different when the question is the enforcement of a statutory obligation).

The credit requirement is a legal obligation of the state acting through the Department under section 985.686. The burden is therefore on the Department, not the counties, to secure the means to comply with the Department's legal obligations. See § 216.181, Fla. Stat. (2014) (requiring agencies to advise the Governor and Legislature if budget amendments are necessary to fund agency obligations); § 216.301, Fla. Stat. (2014) (requiring state agencies to avoid reversion of appropriated funds when valid incurred obligations exist). The counties' obligations must be adjusted to reflect credits due from prior years, and if application of these credits results in a deficit of funding, it is not the counties' obligation to remedy that deficit. See Art. VII, § 18, Fla. Const. (relieving counties and municipalities of the obligation to comply with unfunded mandates).